First case this morning, case number 415-0783 in re Marriage of Erica and John Marshall, for the appellate we have Christopher Shearer, and for the appellate, Wendell Marshall. Please proceed. Oh, I kind of like being judge here.  Counselor. The facts of this case, unfortunately, are not all that uncommon. It's about two parties who, after divorce, have expenses that exceed their income. And the issues before the court center on the question of how far into the red is my client required to go. The parties were married in May of 2010, and they had two children together. And a petition for dissolution of marriage was filed in April of 2014. In February of 2015, a judgment was entered that incorporated a marital settlement agreement and a joint parenting agreement. At the time that the divorce was entered, my client, John Marshall, was unemployed. And recognizing that, his child support obligation was established at $20 per week, and he was obligated to conduct a job search. And he also agreed to pay $20 per week for an in-home daycare provider. On May 22, 2015, Erica Marshall filed a petition to modify support in anticipation of John Marshall receiving employment with the state of Illinois through the Illinois Department of Corrections. She requested a modification of child support that would be established at the statutory amount, and that he be obligated to pay one-half of the children's daycare expenses. A hearing was held on the morning of September 4, 2015, and the court's order was thereafter entered the same day, but the court did not rule from the bench. The court found that $584 per month represented 28% of John Marshall's net income. The court also ordered that amount to be retroactive to the date of filing of the petition, which was May 22. The court also ordered John Marshall to pay one-half of the children's daycare expenses. How much of his net income is that when you include the child support? I'm talking about the daycare expenses plus the support equals what percent of his net income? Well, if you include the arrearage amount that the court ordered as well, that is approximately 58% of his net income, based on the court's finding of what his net income was. And that's calculated by taking the monthly child support amount of $584, and that being 28% of $2,086. Counsel, I know with respect to one of the children, they had about a year to go before that child would go into school, and there was representation that there would be a reduction in the daycare expense with one child actually going into school and getting the, I guess, before and after school care. Do we know how much of a reduction? We do not. That's not in the record, Your Honor. We're challenging two issues today. First is whether the daycare expenses or ordering John Marshall to pay one-half of the daycare expenses was reasonable. And secondly, we have a couple of arguments with regard to the retroactivity of the support award. Under Section 505 of the Illinois Marriage and Dissolution of Marriage Act, daycare expenses can be awarded if they're found to be reasonable. Here, the testimony in the financial affidavits of the parties indicated that neither one of them could afford $1,030 per month in daycare expenses. Erica Marshall's gross income was approximately $3,934.24 per month, but she testified that she operated at a negative each month and was required to borrow money to meet her expenses. John Marshall's gross income was $3,536, and the court found that his net income for child support purposes was $2,086. Well, what's a trial court to do when there's no alternative presented for daycare? We believe Mr. Marshall did present alternatives. They were just simply disregarded by Erica Marshall, and she proceeded with what it was that she unilaterally decided to do. Was there a suggestion other than his girlfriend's mother, and I think the mother in this case testified that there were no openings there. What did he suggest other than that? He suggested more of a collaborative process. Was there another facility or a specific person for in-home daycare that he suggested? No, there was no testimony on that. Mr. Marshall testified that he was notified that he had less than a week to come up with an alternative for her to consider, and I think the testimony made clear that he did not feel that that was any kind of a collaborative process that the decision had been made, and that he was just going to let the court decide what needed to be done about that. Go ahead, you're fine. Well, I was just going to ask, following up with Justice Turner's question about the reasonableness issue, and was there an alternative suggested, do you agree that the trial court's reasonableness determination is as to choosing between competing alternatives as opposed to whether or not any daycare provider would have been a reasonable alternative? In other words, both parties were, both made the determination that daycare was necessary, so it's not that, I mean, even if it was $10 a month, since both were operating in the red, neither could afford that either, but since daycare was necessary, the trial court had to basically consider, okay, what are you giving me in terms of options? Erica provided her option after researching several. John didn't present any at the time of the hearing that were available at the time of the hearing, so wasn't the trial court left with simply considering one option? Well, Mr. Marshall did testify that he had inquired at an in-home daycare, determined that the cost was $110 per week. Was that available at the time of the hearing, though? There was conflicting testimony on that. He indicated that he got put on a waiting list, and Erica Marshall indicated that she, from the timeline that I gleaned from the record, she inquired on the day that she submitted the application to the Presbyterian daycare and found out that that particular provider was not available. But it also, I mean, the full-time provider also admits the fact that Mr. Marshall was available two days per week to care for the children based on his work schedule, that a full-time facility was not necessary under the circumstances. And Mr. Marshall indicated in his testimony that Erica did not reveal to him that she had inquired into any in-home providers other than the one that he suggested, and she indicated in her testimony that she did not desire an in-home daycare, which is inconsistent with the fact that the parties agreed on an in-home daycare and it was sufficient for their children's needs up until the time that Tina Hickey apparently decided, for whatever reason, that she was no longer able to care for the children. Okay, but at the time of the hearing, she presents option A, and you're saying that was not economically feasible for the parties. What was the option B that the trial court on that day would have had the opportunity to select? What did John say, this is what I'm offering up, what were the parameters of that option B, or was there one? Other than the Deborah case, and other than his... Was there an opening? According to Erica Marshall, there was none. So that's not an option, is it? That's not an option, and he was available two days a week, which is not an option for an alternate provider, obviously. So there were no other options presented. John Marshall did not present an option of, you know, we could go with this particular provider, whether it's a facility or in-home provider. But I think his testimony made clear that he felt that he was without any recourse, that he didn't have the ability to provide that kind of input because the decision had already been made that his ex-wife was telling him that she had final say on the issue. So he felt that any efforts on his part, I think the testimony indicates that he felt any efforts on his part would have been futile at that point. Well, there's no dispute that they only had a week, correct? I think that's... That wasn't her fault, or it wasn't your client's fault either, but they had seven days. Right, that's... Okay, I just wanted to make sure. That's what was indicated, yes. And your client was in training for the new job at the time that occurred, is that right? Yes, he was recently graduating from the academy to become a correctional officer. And I think the testimony revealed that he graduated on a Friday or something on a Saturday, and then he found out on a Sunday, and then it was the following Friday that the children were enrolled into Presbyterian day care. But looking at John Marshall's financial situation, he testified that he had transportation expenses of roughly $750 per month, which included a $397 per month car payment. He testified that he bought the car on the Saturday previous to the hearing because his high mileage Suzuki vehicle blew out its engine and had, I think, 264,000 miles on it. So he was required to purchase a used vehicle so that he could get to and from work. He testified that he was living with his parents, and that he did not desire to continue living with his parents. And he also had approximately $547 per month in student loan payments. So after subtracting the transportation and student loan payments only, that leaves $789 per month for Mr. Marshall to live on. After subtracting the $584 per month in child support that was ordered, that leaves $205 per month for him to live on. Coincidentally, he testified that he thought that somewhere between $200 to $275 per month in contributing towards day care expenses would be reasonable. Now that would cause him to continue to operate in the red, but he never denied his obligation to contribute towards the financial support of his children. He never challenged that he should be obligated to pay 28% of his net income, and he never denied that he should be required to contribute some amount to his children's child care expenses. But the result of the court's order is that he has no prospect of moving out of his parents' home. And based on these sayings, we believe that the court abused its discretion in finding that John Marshall being required to pay one-half of the day care expenses was reasonable under the circumstances. Our second argument concerns the retroactivity of the child support order. And we have two arguments on that. The first one is that the facts demonstrated that he had an inability to pay the retroactive amount based on his calculated net income. And secondly, even if the court were within its discretion to order the award to be retroactive, it erred as a matter of law in making the award retroactive to May 22nd when the petition was filed. The undisputed facts before the court were that he started his new job on June 22nd and received his first paycheck on July 15th. So it's our position that if the court were to award retroactive support, it should have been based on his increased ability to pay support, which occurred on July 15th upon receipt of his first paycheck. So your position is if we find that retroactive support is proper, it should be based upon July 15th, not the first date of your client's employment, correct? And why is that? Why should it matter as to the date that he was paid as opposed to when he began the work that he would be paid for? His ability to pay an increased amount occurred on July 15th upon receipt of his first paycheck. That's our position on that. And do you have case law that supports the proposition that it's the date that the individual is first paid as opposed to the date that the individual first begins to work that should start the retroactive pay period? I do not. Now, counsel, you noted that there was no request for retroactive support in the petition that was filed. Is that required before the court has the authority to award support retroactively? I don't believe so. I don't believe that that's a necessary prerequisite to the court awarding it. So you would concede that the court did have the authority to do it, but your primary problem is the date? Yes. After we get over the threshold issue of his inability to pay the retroactive amount, then yes, the second issue would be the date on which the award was made retroactive to. On that point, his ability to pay retroactive support, I'm curious, along the lines of case authority, do you have any case authority that suggests that the trial court is to take into account the individual's ability to pay in making a determination as to whether or not retroactive child support is proper? I do not, Your Honor. It is based on the statute that allows the, you know, it doesn't require retroactive awards. It's best for the trial court with discretion to make the award retroactive, so we're simply arguing that the court abuses discretion in making it retroactive based on Mr. Marshall's financial circumstances and taking into consideration both the $584 per month award of support and the requirement that he pay $515 per month in daycare expenses. In summary, based on the facts of this case, it's apparent that John Marshall's monthly expenses will continue to exceed his monthly income. The only question is how deep into the red he must go. We submit that the law does not support the notion that he must be required to operate at an $800 per month deficit based on the facts of this case. If there are no further questions, I thank you for your time. Seeing none, Rich, you'll have rebuttal. Thank you. Ms. Thomas. May it please the Court. Counsel. In this case, John Marshall is appealing the trial court's order of September 4, 2015, and the trial court found that the selection of the Presbyterian daycare was reasonable and required John, of course, to pay one-half of that and also increase John's child support obligation to $584 per month retroactive to May 22, 2015, which was the date that Erica Marshall filed her petition to modify support. Counsel, do you have any case law supporting the notion that the Court can order support retroactive to the date of the filing when the person isn't even employed in the employment on that date? Well, in the motion to modify, Erica Marshall alleged that he was, in fact, currently employed. But the record doesn't support that. Would you agree? I would disagree. Now, granted, while in hindsight in reviewing the record, additional questions perhaps could have been asked. Let's assume he wasn't. Let's assume he wasn't employed at the time that the petition was filed. Would it be appropriate to order it retroactive to that date if the person is not even employed?  And I think that I would have been, since I assisted her in filing that motion to modify, I would have an ethical obligation to make sure that I had a reasonable belief that she was, in fact, employed to include that allegation in the petition to modify support. And in the petition to modify support, Erica alleged that John Marshall was currently employed and so that there has been a substantial change in circumstances that would warrant a modification of support and him to pay one half of the daycare expense and any other relief as may be just and equitable. On that issue, jumping off from where Justice Holder-White left off with the retroactivity issue, assuming it's the DOC employment, you heard counsel suggest it should be, the earliest retroactive date should be the date that he was paid in July as opposed to the date that he began his employment on June 22nd. What's your position on that? I believe that it would be the date that he commenced his employment, not the date that he received his first paycheck. Here again, do you have any case authority to support that? No, I do not. And there was no evidence that John Marshall ever denied or refuted Erica's allegation in the petition to modify that he currently had full-time employment when the petition was filed. During closing arguments, counsel for Erica, that would be me, argued that the increased support obligation should be retroactive to the date that she filed the petition, which was May 22nd, 2015. And neither John nor his attorney objected to that argument, nor was the court then advised by Mr. Marshall or his counsel the date that it should have been effective. What about, didn't he testify, first of all, about the fact that he was unemployed at the time of the disillusion and then said that the job he was working now, while it was obviously more than when he was unemployed, it wasn't as much as the job he had, I guess, before he became unemployed. And didn't he testify as to when he started working? Well, he testified when he started working for the Department of Corrections. Right, and so that's what I'm saying. Isn't that enough for the judge to determine the date of retroactivity? Do they have to do more than that? I think that the judge could easily have said that it was definitely retroactive to June 22nd. But my argument to the trial court was that it should have been retroactive to the date of filing the petition because Mr. Marshall was put on notice at the time that the judgment of disillusion of marriage was entered, that child support would be modified upon him attaining full-time employment or otherwise receiving unemployment benefits. He was obligated by the court to conduct an employment search and provide notice of same to Erica Marshall so that she would be able to file a petition to modify. So Mr. Marshall was well aware that an increase in child support would be forthcoming as soon as his income increased or he started receiving unemployment benefits. Counsel, I think we would all agree it's troubling that the parties are so far underwater on a monthly basis in terms of their net income versus net expense, including the daycare expenses here. Included in the expenses for Erica were her home ownership costs, the mortgage payments, whereas John Marshall was living in his parents' home. Should the trial court have looked at the equities there to view the fact that she was actually accumulating income? An asset, building equity in an asset, and that was included in the monthly expenses as opposed to John Marshall not having that same expense? Well, I do think that should be included in the equities, particularly because children should maintain the same standard of living. And in fact, that was the home in which the children had lived in. And Erica was awarded, well the parties were awarded joint custody with Erica having primary child care responsibility and subject to Mr. Marshall's right to visitation. So the children were residing in that home and so it is important for the children to maintain that same standard of living. And of course, Mr. Marshall, by not having a house payment, he was able, presumably, and could potentially be in a better financial position, that his expenses are significantly less than Ms. Marshall. I mean, besides his transportation expense, he had minimal food expense. And really, that was it, besides his choice, his voluntary choice, to pay down student loan debt. And of course, the record is not clear exactly how much he was paying over and beyond the amount that the payment plan required. The record does indicate, per Mr. Marshall's testimony, that he was trying to get that paid down so that he would be able to go out and buy a home. So it seems as though his priority was to try to reduce the debts to get him in a superior financial position. But when you look at the equities of the parties, the parties were earning about the same amount of income, Erica was earning approximately $5,000 more a year than Mr. Marshall, but her expenses far exceeded those expenses of Mr. Marshall because he had the benefit of being able to live with his parents and have his parents pay those expenses, which gave him more money available where he would be able to assist in supporting his children. You said his student loan payments were voluntary, but part of it wasn't mandatory? Or are you saying the record is unclear that he was paying more than what was required? The record indicates that he was trying to pay down his student loan debt, so he was paying more than the minimum amount that was required. But the record is not clear on what the minimum amount was that I don't know. But again, as I believe that I have stated, that John did remain silent on the issue of retroactivity of support, and so he raises this issue for the first time on appeal, and I believe that the silence on bringing the issue before the trial court bars John Marshall from now addressing it at the trial court level simply to have another bite at the apple. And he is now stopped from complaining of error that the trial court made when that issue was not brought before the trial court. But if the argument concerning retroactivity is not considered forfeited, as I am suggesting that it is, the trial court did act within its discretion to allow support to be retroactive to the filing date of the petition to modify for the reasons that I have indicated. Counsel, when was retroactive child support first requested? It was requested at the trial. At what point during the trial? During closing argument. Do you believe that that fairly put John on notice at the hearing, that he would have to defend against a retroactive support argument, such that by not arguing against it, he's forfeited the argument? I do believe so. Anytime that support becomes an issue, the issue of retroactivity is inherent. I don't believe that the petitioner needs to allege or specifically seek relief for retroactive support. As it's provided by statute and case law, that the court has the authority to do that. And because it is well established that the court has the authority to order retroactive child support, and Mr. Marshall knew that he was going to be paying increased support once he obtained full-time employment or otherwise received social security or unemployment benefits, he could have easily started saving so that the arrearage wouldn't seem so excessive. And he could have set that money aside, particularly since he didn't have those living expenses, since he was living with his parents, but he failed to do that. So it is not unfair to Mr. Marshall to require him to pay retroactive support, because he knew that that was an issue. So was there any presentation at the hearing of what the supposed income prior to the Department of Corrections was? There was no documentary evidence. There was testimony that John had provided. What was that testimony other than him saying that it was less than the job he had before he became unemployed? That was the testimony. There was no amount. But I think that the court can reasonably infer from the testimony that was provided that the amount that he was earning from the Department of Corrections is about the same that it was at the job prior to that, because the court had no other evidence to the contrary to consider, and could only consider the evidence before it. I think that testimony is definitely subject to alternative interpretations. I think that's the best way to say it. And maybe while it could certainly be subject to alternative interpretations, the standard of review is whether the court abused its discretion in awarding that. But whose burden is it at that hearing to demonstrate the change in circumstances, which would logically include the amount of the income so that the court can set the right amount? Whose burden is that? The burden is on the petitioning party. And the petitioner alleged in the petition to modify that he was currently employed. And then the only evidence presented to the court was the income that was being earned through the Illinois Department of Corrections. So I would ask the court to affirm the trial court's ruling with regards to the retroactivity of support, to the date of filing the petition to modify, as well as ordering Mr. Marshall to pay one half of the daycare expense. Thank you, counsel. Is there any rebuttal? Thank you. Justice Turner, you asked about the balance on his student loans. Mr. Marshall's financial affidavit indicated a balance of approximately $145,000 plus at the time of the hearing in student loan debt. On that issue of student loan debt, as it presently stands, he's not allowed to deduct student loan payments from child support calculations of net income. Is that right? Because this was entered in 2015, correct. Okay. But is the law subject to change here in the near future such that it would allow a deduction for student loan expense? I believe the law did change. I think the January 1st of this year. Okay. I want to refer the court to one of the cases we cited in our opening brief, the marriage of Carlson or Banzig. It's 2013, Illinois at 3rd, 120731 from the 3rd District. In that case, there was an issue regarding payment of extracurricular expenses. And in that case, the trial court on reconsideration chose to reduce the father's obligation to pay 40% of the children's extracurricular expenses to 20%. The mother appealed that case. And the appellate court in that case decided it was entirely proper for the trial court to have reduced the extracurricular expense from 40% to 20%. Because with the imposition of 40% of extracurricular expenses, the father was paying approximately 50% of his net income in child support and children's expenses. And after reducing it, he was only paying approximately 40%. And the appellate court actually said, we commend the court for reconsidering and then correcting its own error. So clearly that indicated that they believed it to be error for that father in that case to be paying more than 50% of his net income in total children's expenses. And in this case, Mr. Marshall is paying 58% of his net income when you consider child support, half the daycare expenses and the arrearage amount on a monthly basis. Counsel, in the case that you're referring us to, what was the financial condition of the mother? Was she also going in the hole like the mother in this case is? I don't believe so. Mother was making approximately $76,000 per year, and father was making somewhere in the neighborhood of $50,000 per year. You know, recognizing the language that you quoted from that case, still the situation was reversed there. The third district was simply saying the trial court did not abuse its discretion. Here you're asserting an abuse of discretion. So it's really the opposite side of the coin here that you're asserting. Had Judge Tobin in this case ruled in your favor, you could certainly have an apples-to-apples comparison with that third district case, but it's not quite apples-to-apples, is it? I would agree with that. But using that rationale, if Judge Tobin had accepted John Marshall's proposal to pay $275 per month towards the daycare expenses, that would have resulted in 47% of his net income being paid out representing $584 per month child support, $275 towards the extracurricular, and $116 per month towards the arrearage. If you take that arrearage amount out, then it would have been 41% of his net income being applied towards child support and the daycare expenses. If there are no further questions, it's always a pleasure to be here. Okay. Thanks to both of you. The case is submitted and the court seems to recess.